## COURT OF APPEALS.

GEORGE G. FREER and others, appellants agt. ABRAM STO-
TENBUR, respondent.

The owner of land out of possession may maintain an action for an injury to the land,
   to the inheritance.

A lease of land for agricultural purposes does not give the tenant a right *to work a
   quarry on the land.*

If, in an action between a tenant and a trespasser claiming title, the defendant pleads
   title, and is defeated in the action, he cannot afterwards, in an action between him-
   self and the landlord, *litigate the question of title again.*   The first record is conclu-
   sive against him, notwithstanding the parties are different. (*Reversing S. C.* 36
   *Barb.* 641.)

*June Term,* 1866.

Appeal from an order of the supreme court, at general

term, granting a new trial on a judgment for plaintiffs at special term, entered on report of a referee. The facts are fully stated in the opinion of the court.

E. H. Benn *and* John H. Reynolds, *for appellants.*
J. McGuire *and* Francis Kernan, *for respondent.*

*By the court,* Davies, Ch. J. This action was brought to recover the value of certain stones taken and removed by the defendant, from land owned by the plaintiff's testatrix, Cynthia Ann Freer, the widow and devisee of Samuel Watkins, deceased. The co-plaintiff, John T. Durkee, was the lessee of said premises; but as the action proceeded only for the injury to the reversion, and no claim was made on the trial for the damagess to the lessee, he may be regarded as an unnecessary party, and his name can be stricken from the record. (*Code,* § 173.)

The following facts and conclusions of law were found by the referee who tried the action, to wit:

*First.* That on the 30th day of January, 1839, Samuel Watkins, late of the county of Chemung, deceased, being the owner in fee of certain lands in said county, executed and delivered to the plaintiff, John T. Durkee, and one Asher S. Durkee, an indenture of lease, whereby he demised the same to said Asher S. and John T. for the period of twenty years from the first day of April, 1839; that said premises consisted of about 125 acres of land, which were leased for agricultural purposes, and embraced the locality from which stone were taken by the defendant, as hereinafter stated; that on the 7th day of February, 1846, the said Asher S. Durkee assigned all his interest in said lease, and in the premises, to said John T. Durkee; that on or before the first day of April, 1839, said lessee took possession of the demised premises, and occupied the same until the assignment to said John T. Durkee, and the said John T. has since occupied as such lessee to the time when this action was commenced.

*Second.* That said Samuel Watkins died on the 10th day of May, 1851, seized in fee of said premises, and leaving a last will and testament, whereby he devised in fee all his real estate, and bequeathrd all his personal property, to his wife, Cynthia Ann Watkins; .that said will was duly proved as a will of real and personal estate, admitted to probate and recorded by the surrogate of Chemung county, on or before the 14th day of October, 1851, and letters testamentary were granted thereon to Hiram Gray, Amasa Dana and Edward Howell, the executors therein named, who took the oath required by law, and entered upon the execution of the trusts created thereby.

*Third.* That the said Cynthia Ann Watkins intermarried with George G. Freer, about the month of February, 1852; that this action was commenced about the 9th July, 1853, by said Freer and wife, and the plaintiff John T. Durkee; that since the action was commenced the said Cynthia Ann Freer died, leaving a last will and testament, which has been duly proved and admitted to probate; that letters testamentary thereon had been issued to said George G. Freer and Orlando Hurd, the executors named therein, and an order has been made substituting the said executors as plaintiffs in this action.

*Fourth.* That about the 7th July, 1853, and before the commencement of this action, the said Cynthia Ann Freer, by an instrument in writing, assigned to the plaintiff, John T. Durkee, an equal, undivided half of all claims for stone theretofore taken from said premises, and to all the stone so removed, by whomsoever taken, in which transfer said George G. Freer joined and gave his consent thereto; that on or about the 6th February, 1852, said Hiram Gray and Amasa Dana, two of the executors named in the will of said Watkins, by an instrument in writing duly acknowledged and recorded (in which they recite that they are the only executors who have united in making an inventory, that they have fully executed the trusts created by said will), assigned

and transferred to said Cynthia Ann Watkins, in considera-
tion of the premises therein recited and of one dollar, all the
personal property and estate of the said Samuel Watkins,
contained in said inventory, and all other personal property
whatsoever belonging to said estate, qr to them as executors,
and by which they also authorized her to demand and collect
in her own name all of the moneys, debts and contracts
belonging to said estate, and to them as executors thereof,
and which were devised and bequeathed to her.

*Fifth.* That a portion of said premises so leased as afore-
said were situated within the bounds of the village of Havana,
and upon which was a public highway known as Steuben
street; that the said Samuel Watkins was also the owner of
other lands lying within the bounds of said village, and upon
which was a highway known as Mills street; that in the
year 1844, the trustees of the corporation of the village of
Havana, claiming to act under the charter of said village,
assessed the sum of $530.64 for grading and improving Steu-
ben street, and $167.04 for grading and improving Mills
street, in said village; that all the trustees were not present
when said assessments were made; that such assessments not
being paid or collected, the trustees aforesaid, claiming to
act under the authority of said charter, proceeded to sell the
portion of the demised premises situated in said village, for
the taxes aforesaid; that such sale was made about the 20th
day of March, 1845, and said portion of lands was purchased
by Peter Tracy for the term of nine hundred and ninety-nine
years; that the said sale was entire, and the trustees executed
a deed of conveyance to said Tracy on or about the 31st
March, 1845, of that portion which was not redeemed by
Dr. Watkins, which deed was duly recorded in the clerk's
office of said county; that the lands so sold were bounded
upon and by other streets of said village, as well as said
Steuben street aforesaid, and was sold for the aggregate
amount of assessments and costs; that the said Peter Tracy,
claiming to act under and by virtue of said purchase, at

different times quarried stone from that portion of said premises lying on the west side of the centre of Steuben street, and within the boundaries of said highway, and on or about the 1st day of May, 1848, sold and conveyed to Charles Cook, by a quit claim deed, a portion of premises so purchased by him as aforesaid, embracing the land from which stone were quarried by the defendant, as hereinafter stated; that the defendant, about the month of May, 1848, by the direction and license of said Cook, began quarrying stone upon a portion of said premises, lying in said Steuben street, situated north of where stone were quarried by said Tracy, and that the defendant, down to the commencement of this suit, from time to time, was engaged in taking stone from said quarry; that his excavations extended from two to three rods from the centre of said street, and undermined a portion of the fence on the west side of said street; that the lands from which stone were so taken were open to said street and uninclosed; that no one resided thereon, but the said plaintiff, John T. Durkee, continued to live upon and occupy said premises bounded by the said street, under the lease as aforesaid; that said defendant, between the months of April, 1848, and the 7th July, 1853, took from said premises 3,300 cubic yards of stone, about 2,545 yards of which were removed before the death of said Watkins, and the balance after his death and before the 7th July aforesaid; that said stone in the quarry were of the value of $412.50; that after they were taken out, and before they were dressed or removed, they were worth the sum of $826.00, and that after being fitted for the various purposes for which they were furnished by defendant, and by him delivered to the persons receiving the same from him, in and about the village, they were of the value of one dollar per yard; and that stone had been taken from said ledge at various periods for thirty years past, at different points along the same; but Steuben street was not opened and worked until after the lease aforesaid.

*Sixth.* That on or about the 14th July, 1852, the plaintiff,

John T. Durkee, recovered a judgment in this court against the defendant for six cents damages and $115.07 costs, in an action commenced by said Durkee by virtue of his right as the tenant of Dr. Watkins; in which action the defendant justified under the corporation sale and the license from Cook as the grantee of Mr. Tracy, and in which the plaintiff set up and insisted the said sale was null and void, and that said action was for a removal of a portion of the same stone specified in the complaint in this action.

He further found as conclusions of law:

*First.* That the plaintiffs are the persons who are entitled to recover whatever damages the defendant is liable to pay for the removal and sale of said stone as aforesaid, both before and after the death of said Samuel Watkins.

*Second.* That by the judgment aforesaid it was determined that said corporation sale was void and did not protect the defendant, and that such adjudication is binding upon the defendant in this action, and that the recovery of six cents damages by said John T. Durkee forms no bar to the actions of the plaintiffs.

*Third.* That the said sale by the corporation of the village of Havana to Tracy was not in accordance with the requirements of the statute, and vested no title or right in said Tracy, and that said Cook acquired no title by the deed from Tracy, and the defendant was not justified in the removal of said stone by the license he derived from said Cook.

*Fourth.* That the facts of this case do not show an adverse possession on the part of said Tracy, and those claiming under him, as against the plaintiff in this action.

*Fifth.* That the plaintiffs are entitled to recover for the stone so removed as aforesaid their value in the quarry, which is the injury to the inheritance, and not their value after their removal and being converted into building material for the purposes of sale, and that the plaintiffs are also entitled to interest upon the said amount from the time of the commencement of this action, to wit., the 7th July, 1853.

Upon these facts the referee gave judgment for the plaintiffs for the value of the said stone, $412.50, in all $629.06, and the judgment thereon was reversed by the general term of the supreme court, and a new trial ordered. The judgment was not reversed on questions of fact.

This court, therefore, is confined, in its examination of this apppeal, to the inquiry whether, upon the facts found by the referee, the plaintiffs were entitled to recover; and secondly, whether any errors were committed by the referee in the admission or rejection of evidence, and also whether the motion for a non-suit was properly refused.

The motion for the non-suit was based mainly upon the ground that the stone taken belonged to the tenants or holder of the lease, and not to the owner of the inheritance or reversion. It is clear, if this position be tenable, the plaintiffs could not recover in this action, as it appeared, and was not controverted, that Durkee, the lessee, had recovered nominal damages against this defendant for the damages which he as tenant had sustained.

This action is maintainable under the provisions of the Revised Statutes, which declare that a person seized of an estate in remainder or reversion may maintain an action of waste or trespass for any injury done to the inheritance, notwithstanding any intervening estate for life or years. (3 *R. S. 5th ed. p.* 39, § 8; *Van Deusen* agt. *Young*, 29 *N. Y.* 9; *Schermerhorn* agt. *Buell*, 4 *Denio*, 422.)

The reversion has therefore clearly sustained an injury to the value of the stone taken and carried away, unless the position assumed by the defendant be correct, namely, that the stone belonged to the tenant or lessee, in which event no action can be maintained by the reversioner for their conversion. This ground is sought to be maintained upon the finding of the referee that stone had been taken from said ledge, that is, the ledge upon the premises of the reversioner, at various periods for thirty years past, at different points along the same: and the authority of *Saunder's* case (5 *Coke*, 12), and

the various cases in which the doctrine there laid down has been affirmed, are invoked as sustaining it.

Assuming, therefore, that this quarry or ledge was open at the date of the lease to Durkee, does it follow, upon the authority of *Saunder's* case, that he was entitled to the stone therein, by virtue of his lease? It is to be observed that the referee has found as a fact that the premises were leased to Durkee for *agricultural purposes,* and this would seem to exclude by the terms of the lease the right to take and quarry stone from the land demised.

In *Saunder's* case, he brought an action of waste against Manwood, assignee of the term in the tenement, for waste done in digging sea coal, and on great deliberation, it was

*Resolved,* That if a man hath lands, in parts of which there is a coal mine open, and he leases the land to one for life or for years, the lessee may dig in it; for, inasmuch as the mine is open at the time, &c., and he leases all the lands, it shall be maintained that the intent is as general as his lease is, namely, that he shall take the profits of all the land, and, by consequence, of the mine in it.

Now, it is seen that the principle of this case is inapplicable to that now under consideration. No such intendment can arise in this case as was found in that; for here the land was leased for a particular purpose or object, and by the express terms of the lease its enjoyment by the lessee was limited to the defined use, namely, "for agricultural purposes." It cannot, therefore, be intended that, under the lease to Durkee, he should take the profits of all the lands, and of the quarries and mines upon it. His estate and interest were limited and defined, and he took therein only what was necessary for its use and enjoyment for agricultural purposes. And the intendment which the case might raise, when the lease contained no specification or restriction as to the use of the demised premises, is rebutted in this case by the indorsement made on the lease at the time of its execution, and what must be deemed and taken as part thereof,

namely, the authorization by the lessor that the lessee might get or sell stone off the premises described in the lease, by yielding to the lessor one-half of the stone sold by him.

This position is enforced and illustrated by the case of *Schermerhorn* agt. *Buell* (*supra*). The lease contained a clause in these words: "All the timber in the southeast corner, of about five acres, suitable and proper for fuel, *to be left*, and *not cleared*." The lot was wild and uncultivated at the date of the lease. The defendant entered and cultivated most of the land, and on the five acres in the southeast corner of the lot he cut some trees which were suitable and proper for fuel, and carried away the timber.

For that wrong, that action was brought by the plaintiff, the owner of the land, and the lessor. It was held, that the lessor had the right, both of property and possession, in the trees, and that he might sue whenever they were carried away and converted to the use of another.

In the case at bar, the lease being a demise of the land for agricultural purposes only, it did not pass to the lessee the right to take and carry away the stone in the quarry upon the demised premises, although the same had been open anterior to the granting of the lease, and that consequently the property therein remained in the lessor, and the removal thereof was an injury to the inheritance.

As to that portion of the stone taken by defendant before the death of Watkins, the claim of the plaintiffs' testatrix, the right thereto was assigned to Mrs. Freer by the executors of Watkins, and could be rightfully recovered in this action.

The only question, therefore, remaining, is whether the defendant showed any title to the premises from which the stone were taken.

He justifies the taking and conversion of the stone on the ground that he had such title. That title was derived through a sale by the trustees of the village of Havana, to pay an assessment for the grading and improving of Steuben street, in said village, upon which street said premises were

located. That such assessment not being paid or collected, the trustees, claiming to act under the authority of the charter of said village, proceeded to sell the same to pay said assessment; that at such sale, the premises from which said stone were taken were sold to one Tracy, for the term of nine hundred and ninety-nine years, and a conveyance executed to him therefor, and that he subsequently conveyed the same to one Charles Cook, and that the defendant took said stone with the leave and advice of said Cook.

In the suit commenced by Durkee, the lessee, against the defendant, for the recovery of the value of the same stone, it was adjudged that said sale, and all the proceedings therein, were invalid and void, and conferred no title upon said Cook; and the referee found as a conclusion of law, that, by the judgment aforesaid, it was determined that said corporation sale was void, and did not protect the defendant, and that such adjudication was binding upon the defendant in this action.

This judgment is binding on this defendant upon this question, and he cannot be permitted again to litigate the validity of these proceedings, and of the title acquired by the assessment sale under them. (*Embury* agt. *Conner and another*, 3 *Comst.* 511; *White* agt. *Coatsworth*, 2 *Seld.* 137; *Castle* agt. *Myer*, 4 *Kern.* 329.) These authorities clearly establish the proposition that this defendant cannot again litigate the validity of that sale, and the title of his licensee under it.

The order granting a new trial should be reversed, and judgment on the report of the referee affirmed, with costs

All concur.

Order reversed.